UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10112-RGS -02-RGS

UNITED STATES OF AMERICA

v.

KARL THOMPSON

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

MAY 14, 2004

BOWLER, Ch.U.S.M.J.

   On or about April 15, 2004, defendant Karl Thompson (the "defendant"), was arrested pursuant to an eight count Indictment returned in this district on April 8, 2004. The Indictment charges the defendant and codefendants Justin Teal (codefendant "Teal"), Ablolom Woldeslassie (codefendant "Woldeslassie") and Roland Worrell (codefendant "Worrell")(collectively the "codefendants"). The defendant is named in counts five and six of the Indictment. Count Five charges the defendant along with Teal and Woldeslassie with distribution of cocaine base in

violation of Title 21, United States Code, Section 841(a)(1), distribution within a playground zone in violation of Title 21, United States Code, Section 860(a) and aiding and abetting in violation of Title 18, United States Code, Section 2. Count Six charges the defendant and Teal with distribution of cocaine base in violation of Title 21, United States Code, Section 841(a)(1), use of a juvenile in violation of Title 21, United States Code, Section 861(a) and aiding and abetting in violation of Title 18, United States Code, Section 2.

The defendant had his initial appearance before this court on April 15, 2004. He was represented by court appointed counsel. The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant. 18 U.S.C. §§ 3142 (d)(1)(A)(i), (f)(1)(C), (f)(1)(d) and (f)(2)(A). The government moved for a three day continuance and a detention hearing was scheduled before this court on April 23, 2004.

On that date defense counsel sought a continuance until April 27, 2004. On that date this court conducted a hearing on the issue of detention. The defendant was represented by court appointed counsel. The government called two witnesses speaking to the issue of detention. The defendant did not call any witnesses. This court took the issue of detention under

advisement[1].

## DISCUSSION

I.   A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

Under 18 U.S.C.§ 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . .;" (2) by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the

---

[1] Codefendant Worrell entered into a period of voluntary detention without prejudice on April 20, 2004. Codefendant Woldeslassie entered into a period of voluntary detention without prejudice on April 23, 2004 and codefendant Teal entered into a period of voluntary detention without prejudice on May 5, 2004.

3

person as required . . .;" or (3) there is a serious risk the defendant will flee.² This determination is made by the court at the conclusion of a detention hearing.

B.  The government is entitled to move for detention in a case that:

(1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);³

(2)  involves an offense punishable by death or life imprisonment;

(3)  involves an offense prescribed by the Controlled

---

² The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.) By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--applied. That is precisely the holding in the Second Circuit. See e.g., <u>United States v. Jackson</u>, 823 F.D 4, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986), <u>cert. dismissed</u>, 107 S.Ct. 562 (1986); <u>see also United States v. Patriarca</u>, 948 F.2d 789, 792 (1st Cir. 1991).

³ Section 3156 of Title 18 of the United States Code defines a crime of violence as:
  (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

  (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 3156(a)(4).

Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[4] or

(4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. § 3142(f).

C. In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the accused;

---

[4] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 333, 336-7 (1st Cir. 1989).

> (3) the history and characteristics of the person, including--
>
> > (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

D. The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced. The government must satisfy its position with respect to risk of flight by a preponderance of evidence and with respect to dangerousness by clear and convincing evidence. See supra footnote 3. This court must then weigh all relevant factors [set forth under §3142(g)] and

determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. United States v. Patriarca, 948 F.2d 789, 794 ( Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in <u>physical violence</u>. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger <u>that the defendant might engage in criminal activity to the detriment of the community</u>. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also <u>emphasizes</u> that the risk that a defendant will <u>continue to engage</u> in drug trafficking constitutes a danger to the "safety of any other person or the

7

community."

Id. (Emphasis added; footnotes omitted); see United States v. Patriarca, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to community does not refer only to risk of physical violence); see also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to refer only to physical violence); United States v. Hawkins, 617 F.2d 59 (5th Cir.), cert. denied, 449 U.S. 962 (1980) (trafficking in controlled substances).[5]

The issue critical to determining whether to detain a defendant is therefore, whether, with respect to the defendant, based on the guidelines set forth supra in part C of this Order, any condition or combination of conditions of release exist that will reasonably assure the safety of any person and the community; and the presence of the defendant. 18 U.S.C. § 3142(e).

E.  "Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable

---

[5] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

flight presumption."[6] United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). The presumption is not limited to risk of flight. Rather, the presumption has two components. One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community." United States v. Moss, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony. 18 U.S.C. § 3142(e).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and

---

[6] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries. United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). Consequently, imposing "a large bond is often ineffective in deterring flight." United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).

9

the other factors set forth under § 3142(g). The defendant, however, "bears only the burden of production." <u>United States v. Perez-Franco</u>, 839 F.2d 867, 870 (1st Cir. 1988). As explained by the United States Court of Appeals with regard to the statutory presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of production on a defendant. The burden of persuasion remains with the government. Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, <u>Jessup</u>, 757 F.2d at 387--to be considered along with other factors.

<u>United States v. Palmer-Contreras</u>, 835 F.2d at 17-18; <u>see also</u>, <u>United States v. Perez-Franco</u>, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is triggered by the statutory penalty prescribed irrespective of the actual or likely sentence imposed upon the particular defendant. <u>See</u> <u>United States v. Moss</u>, 887 F.2d 333, 337 (1st Cir. 1989) (per curiam). The fact that a defendant may receive a sentence of less than ten years does not make the presumption inapplicable. <u>Id</u>. at 337. Rather, this court may consider such a factor with regard to the weight this court gives to the presumption. <u>Id</u>. At 337.


II. The defendant, Karl Devon Thompson, is 40 years of age. He was born in Boston on January 26, 1964. He graduated from Boston

Technical High School.

For the past four or five years the defendant has resided with his mother at 25 Calder Street in Dorchester. The defendant's father is deceased. The defendant has seven siblings, five of whom reside in Massachusetts. Of the two remaining siblings, one lives in Rhode Island and the other lives in Georgia.

The defendant is single and has four children from three relationships. The children include 18 year old twins who reside with their mother in Dorchester, a 17 year old son who resides with his mother in Roxbury and a seven year old daughter who resides with her mother in a shelter in Holyoke.

During the week prior to his arrest the defendant was working as a laborer on an "as needed" basis. He was unemployed for the preceding two to three years. The defendant reports no assets. He makes court ordered biweekly child support payments in the amount of $254 when he is able.

By his own admission to Pretrial Services the defendant has been addicted to heroin since the age of 15. He uses the drug on a daily basis. In addition he has used cocaine on a daily basis since the age of 20.

The defendant has a long and serious criminal record. He has prior convictions for possession of a Class B controlled substance (twice), manufacturing a Class B controlled substance,

possession of a Class A controlled substance, possession of a Class D controlled substance, assault and battery on a police officer, threatening and assault with a dangerous weapon. The defendant has an open case for trespassing and a Class A controlled substance.

In addition the defendant's criminal history reflects two civil restraining orders, at least three probation violations and ten defaults.

III. The relevant evidence at the detention hearing showed the following.

The government called Task Force Agent George MacLaughlin ("MacLaughlin"). He testified that he has been a member of the Milton Police Department since 1969 and has held the rank of detective since 1988. Since 1995 he has been assigned to the United States Drug Enforcement Administration ("DEA") as a task force agent responsible for narcotics investigations.

MacLaughlin testified that he was the co-case agent assigned to the investigation leading to above-captioned charges against the defendant. MacLaughlin was shown a document, which he identified as an affidavit he authored in support of the government's motion for detention. The affidavit was admitted as Government Exhibit # 1. The affidavit delineates the scope of the investigation which lasted for approximately one year and

focused on numerous individuals selling narcotics in the Warren Gardens area of Roxbury. The investigation utilized members of the Boston Police Department ("BPD") who made drug purchases while acting in an undercover capacity.

In further testimony MacLaughlin directed the court's attention to tab three of the affidavit, which sets forth a summary of the controlled drug purchases which are reflected in the charges in above captioned Indictment.

According to the summary, on August 14, 2003, the defendant along with codefendants Teal and Woldeslassie sold one gram of crack cocaine to BPD Officer Adolpho Brito ("Brito"), who was acting in an undercover capacity. The transaction was recorded on audiotape and videotape. MacLaughlin explained that the transaction occurred on Copeland Street in Roxbury, which is within 1000 feet of a playground.

On cross examination by defense counsel it was established that MacLaughlin was not present when the transaction took place, nor has he heard or seen the tapes, although he has discussed the events with fellow officers.

According to MacLaughlin, Brito walked down Copeland Street where he approached codefendant Woldeslassie and asked to purchase crack cocaine. Woldeslassie directed him to "the guy in blue," who was the defendant. The defendant then sent a juvenile to get the crack. The juvenile and Brito went into a doorway and

the juvenile sold the crack to Brito. The juvenile in turn gave the drug purchase money to the defendant.

The government called BPD Officer Gregory Brown ("Brown"), who testified that he has been a member of the BPD for 16 years. He added that he has been assigned to the Youth Violence Strike Force for the past 11 years. Brown noted that his responsibilities include gathering intelligence regarding firearms and narcotics.

In further testimony Brown stated that he is familiar with the investigation leading to the above-captioned Indictment. He stated that he was involved from the planning phase through the culmination on April 14, 2004, when numerous individuals were arrested in a series of related cases. Brown said that he participated in surveillance and the identification of targets during controlled buys. Brown added that his squad knew most of the targets and that he has known the defendant for 14 years.

Brown stated that he was aware of the defendant's involvement in other crimes of violence, including robberies[7] and assault and battery. Brown was shown a document which he described as a BPD incident report relating to an assault and battery with a dangerous weapon which occurred around 1:40 AM on Copeland Street on May 30, 2003. The document was admitted as

---

[7] This court notes that the defendant's criminal history reflects that he was charged with robbery in 1991 and armed robbery in 2003. However, he was not convicted on either charge.

Government Exhibit # 2. The document lists the perpetrators as Craig Thompson, Carl (sic) Thompson and James Bogarty ("Bogarty"). Brown stated that the defendant kicked the victim in the stomach and punched him to the ground. The victim had a small stab wound in his back. The victim identified the defendant and his brother, Craig Thompson, as the perpetrators. The victim stated that he was unable to identify Bogarty with 100 percent certainty. Brown testified that the victim, who lives in Washington, DC, did not appear in court to pursue the charges.

On cross examination it was established that Brown was at a surveillance post at the time of the August 13, 2003 drug buy and from that post he was unable to see Brito approach the defendant. Brown added that he "believes" that the juvenile went home to 16 Rockland Street to get the crack cocaine before selling it to Brito. Brown noted that he has known the defendant as a "user, runner and dealer" of drugs.

IV. The return of the Indictment in the United States District Court for the District of Massachusetts in this case establishes the existence of probable cause that the defendant committed the crimes for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(d)(1)(A)(i), (f)(1)(C), (f)(1)(D) and (f)(2)(A). The government must prove by clear and convincing evidence that

if released the defendant would pose a serious danger to any person or the community. In contradistinction, the government must demonstrate only by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear. The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The government's case against the defendant is strong. The defendant sold a gram of crack cocaine to an undercover law enforcement agent on Copeland Street in a residential neighborhood, which is located within 1000 feet of a playground. The transaction was recorded on audiotape and videotape.

The defendant has at least three prior drug convictions. In

addition at the present time the defendant is on release from the Roxbury District Court in a drug case[8]. By his own admission the defendant has used heroin and cocaine on a daily basis for most of his adult life. It appears that he is unable to refrain from drug use and drug related criminal behavior. This is evidenced by his long history of criminal activity and repeated probation violations.

However, the most disturbing aspect of this case is the fact that the defendant appears to have been using a juvenile to facilitate his drug dealing activities, which took place in a residential neighborhood within 1000 feet of a playground. The recruitment of juveniles, who are often paid in drugs according to Brown, to assist in drug dealing is the most heinous of crimes.

The defendant did not proffer any credible evidence to detract from the government's assertion that he has committed a serious drug crime involving a narcotic drug and that he is a danger to the community or any person. This court finds by clear and convincing evidence that there is no condition or combination of conditions that will assure the safety of any person or the community if the defendant is released.

---

[8] Defense counsel represented that this case should be "wrapped up" pending the payment of $200 in court costs.

B. <u>Risk of Flight</u>

Next, this court turns to risk of flight or failure to appear.

Although the defendant has spent his lifetime in the community, this court has a serious doubt regarding whether he will appear as required. In the past the defendant has defaulted in almost every case in which he has been charged. His criminal history reflects at least ten defaults. The defendant has a long and very serious drug habit. By his own admission he has used cocaine and heroin on a daily basis for decades. His employment history is minimal. There is nothing in the defendant's most recent past to suggest that he has become reliable.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community if the defendant is released. In addition, this court has found, at least by a preponderance of the evidence, that

there is no condition or combination of conditions that will assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

    (1)  The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

    (2)  The defendant be afforded reasonable opportunity for private consultation with his counsel; and

    (3)  On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
Chief United States Magistrate Judge