UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES ) <br> ) <br> v. ) <br> ) <br> KARL THOMSON ) | Cr. No. 04-10112-RGS |

**MOTION FOR REVOCATION FOR DETENTION ORDER**

**INTRODUCTION**

  Now comes Karl Thomson and moves this Court, pursuant to 18 U.S.C. §3145(b), to revoke the Magistrate Judge's Detention Order, and to release him on conditions of release.  Karl Thompson is accused of being involved in the sale of approximately <u>one gram</u> of crack cocaine in August 2003.  He has been detained since his arrest in April 2004, approximately some nine months as of this writing.  Mr. Thomson, as set forth in the Pretrial Services report has suffered from drug addiction for approximately 20 years, yet has never received significant treatment.  Through this Motion, Mr. Thomson seeks to be released on conditions to a residential drug treatment facility, where he can begin recovery from the disease of drug addiction.

**PRIOR PROCEEDINGS**

Karl Thomsom was arrested on April 15, 2004 pursuant to an eight count Indictment charging him and three codefendants with the narcotics law violations. Specifically, Count Five of the Indictment charges him with distribution of cocaine base within a playground zone, and Count Six charges him with the distribution of cocaine base, the use of a juvenile in a drug sale, and aiding and abetting. The government moved for detention on risk of flight and dangerousness grounds, pursuant to 18 U.S.C. §§ 3142 (d)(1)(A)(i), (f)(1)(C), (f)(1)(d) and (f)(2)(A). A detention hearing was held on April 27, 2004. On May 14, 2004, the Magistrate Judge ordered Mr. Thompson detained on risk of flight and dangerousness grounds.

**FACTS**

The charges against Mr. Thomson arise from the single sale of approximately one gram of crack cocaine sold to an undercover police officer (Boston Police Officer Adolpho Brito) by an individual alleged to a juvenile. The evidence adduced at the detention hearing and in discovery provided to the defense, indicates that the undercover agent approached one Absolom Woldeslasie on Copeland Street and asked if he had drugs for sale. Woldeslasie replied that he didn't, but that he would later on. Officer Brito said that he needed some now and asked Woldeslasie to introduce him to someone else. Woldeslassie told him to go see the guys on the corner, and, in response to Brito's questioning, directed the agent to a "the guy in blue" further down the street. The agent then approached Karl Thompson. While they were speaking, a juvenile who Brito recognized as being involved in another earlier drug sale, approached them, had a brief conversation, and then went off to get drugs.

Boston Police Officer Gregory Brown testified at the detention hearing that he believed the juvenile went to 16 Rockland Street where he resides with his family to retrieve the drugs. He came back to where Officer Brito was waiting and he and Officer Brito entered a hall way after being told by another individual not to do the deal on the street. After the juvenile sold Officer Brito one gram of crack, Mr. Thomson allegedly entered the hallway, and the juvenile gave a little money to Mr. Thomson.

The Magistrate Judge orders that Mr. Thomson be held on both flight and dangerousness grounds. (<u>Memorandum and Order on the Government's Motion for Detention</u>, May 14, 2004, 16-18, hereinafter "Memorandum and Order") The Court failed to address how the government had met its burden of proving that no conditions of release could reasonably assure the safety of the community or the defendant's appearance as required. While the defendant had proposed that he be placed in a residential drug treatment program, the Court is silent as to why that condition is inadequate (or more to the point, how the government met its burden of proving the proposed condition inadequate). The Court instead focused on the defendant's criminal record, his drug addiction, and in what appears to be a misinterpretation of the evidence presented at the detention hearing, Mr. Thomson's role in the drug transaction.

Discovery produced to the defense indicates that the juvenile who sold the one gram to the undercover officer had been involved in previous sales in which Mr. Thomson had no involvement. While the Magistrate Judge concluded that Mr. Thomson recruited the juvenile to sell drugs and paid him in drugs, the evidence presented at the detention hearing supports a far different and realistic scenario. Assuming, *arguendo*, that Mr. Thomson was in some way involved in the sale, the evidence would indicate that

Mr. Thomson, a long time heroin street addict, simply steered the undercover agent to the seller, and as a reward was paid a small amount of money which he could use to purchase his own drugs. An equally plausible interpretation of the events is that Mr. Thomson, knowing that the juvenile had just completed a drug transaction and had been paid, begged a small amount of money from the dealer so that he could purchase heroin to feed his habit.

Officer Gregory Brown testified at the Detention Hearing that in his experience that addicts obtain drugs or money to buy drugs by steering potential customers to the dealers, that they are known as "runners", that he has known Mr. Thomson for many years, that he knows him to be a drug user, and that he has known him to act as a runner and a dealer. (Transcript of Detention Hearing, April 27, 2004 at 30-32)[1]

## LEGAL ARGUMENT

Upon the prosecution's Motion for Detention, the Magistrate Judge is required to hold a detention hearing to determine whether any condition or combination of conditions would reasonably assure the appearance of the defendant as required and the safety of the community and any other person. The defendant may only be detained on dangerousness grounds if the judicial officer finds by clear and convincing evidence that no condition nor any combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142(f). The burden of persuasion is on the prosecution. United States v. Jessup 757 F. 2d378 (1st Cir. 1985) The judicial officer is directed to consider the factors listed in 18 U.S.C. §3142(g), to wit, 1) the nature of the offense, 2) the weight of

---

[1] The Court mischaracterized this testimony in its decision as supporting the conclusion that Mr. Thomson was using the juvenile to facilitate his drug dealing, and that "the recruitment of juveniles, who are often paid in drugs according to Brown, to assist in drug dealing is the most heinous of crimes" Memorandum and Order at 17. In this case the facts, even if viewed favorably to the prosecution indicate the opposite to be true, i.e., that Mr. Thomson was used by the juvenile and it was Thomson who was paid.

the evidence, 3) the history and characteristics of the defendant, (which include his character, mental and physical health, his family ties, his length of residence in the community, drug and alcohol use, his criminal record, and his history of appearances at court proceedings, whether the crime was committed while on probation or on release), and 4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

In United States v. Tortora, 922 F 2d. 880, 885 (1st Cir. 1990), the First Circuit wrote of the necessity of making a two step inquiry when the safety of the community is an issue. The first is to determine if the defendant currently poses a danger to the community.  If the Court finds he does, then the Court must determine if conditions of release can be imposed which would reasonably assure the safety of the community.  In other words, simply finding a defendant poses a possible danger to the community does not justify detention.  Possible conditions of release are set forth in 18 U.S.C. §3142 (c), and these conditions must be considered, and found insufficient by clear and convincing evidence, before detention can be ordered.  United States v. Orta, 760 F.2d 887, 890 (8th Cir. 1985)

To support detention on dangerousness grounds, clear and convincing evidence sufficient to justify the detention of a defendant means proof that the particular defendant actually poses a danger, not that the defendant in theory poses a danger.  United States v. Patriarca, 948 F. 2d 789 (1st Cir. 1991)(evidence of mafia membership, in and of itself, does not mean that no conditions would reasonably assure the safety of the community) See also  United States v. Ploof 851 F. 2d 7 (1st Cir. 1988) (Danger alleged must relate to instant case – unrelated allegation of danger to others insufficient)

It is important to remember that it is not the prosecution's burden just to show that there is probable cause to believe the defendant committed the crime charged- that requirement is satisfied by the return of the Indictment.  Nor is the prosecution's burden met by a showing that it has a strong case against a defendant or that the charges are serious ones.  It is the prosecution's burden to show why no conditions, no matter how restrictive, will reasonably assure (not guarantee) the safety of the community. ("Requiring that release conditions guarantee the community's safety would fly in the face of Congress' intent that only a limited number of defendants be subject to pretrial detention…[T] he courts cannot demand more than an objectively reasonable assurance of community safety," Tortora, supra at 884 (citations and internal quotation marks omitted)).  And despite the nature of the charge against the defendant in this case, "detention determinations…must be made on the evidence which is before the court regarding the particular defendant" Id. At 888

The government's principal argument against Mr. Thomson's release focused on his alleged involvement in a robbery for which he was never convicted.  In fact, the case is to be dismissed upon payment of court costs, and docket entries detailing this were presented to the Magistrate-Judge.  It would seem that the government itself recognized that Mr. Thomson has a serious drug problem that contributed to his criminal record and that there existed a need for treatment, as the following argument at the detention hearing indicates:

"[T]he reason the government put before your Honor the history, the Boston police incident report is because he, it does show other assaultive behavior <u>that was perhaps driven by his drug habit or need for drugs</u> and just as importantly is he was on release from that offense [the offense to be dismissed upon payment of court costs discussed above] when he committed the offenses with which he is charges here, and to be clear, the offenses all involved one transaction …I suspect that he would not get the

same kind of focus treatment and counseling and whatnot that he would get at a place like Gosnold [a drug treatment facility contracted with Pretrial Services] So its not that there is no treatment available at all [at the Plymouth County Correctional Facility] but probably not as good or as meaningful."

Transcript of Detention Hearing at 35

In fact, Mr. Thomson has received no drug treatment at Plymouth. As to the risk of flight, the government conceded that it did not believe Mr. Thomson would leave the state, but only that he might leave the treatment facility and would be a risk of non-appearance. See Transcript of Detention Hearing at 36-37. Such an ephemeral speculation as offered by the government clearly does not meet the preponderance of evidence standard required to hold someone on risk of flight grounds. The Magistrate Judge found that the defendant has spent his lifetime in the community, but that his criminal record reflected numerous defaults. The Court then focused on his long and very serious drug habit, his use of cocaine and heroin for decades, concluding that "there is nothing in the defendant's recent past to suggest that he has become reliable". It would seem all parties agree that Mr. Thomson has a serious drug problem. The obvious response is to put Mr. Thomson in drug treatment and begin to solve the problem that has brought him into the criminal justice system, instead of simply warehousing him in a county detention facility.

## **PROPOSED CONDITIONS OF RELEASE**

The defendant proposes that he be placed in an in-patient residential drug treatment program. Despite the fact that he has been incarcerated many months, a drug treatment program is necessary for him to acquire the ability and skills necessary for him to remain drug free in the future. Once he has completed successfully completed a drug

treatment program, it is envisaged that he could be placed in a community residential sober facility, or on electronic monitoring and follow-up drug treatment, as the Court and Pretrial Services deem appropriate. This course of action has been successfully employed with literally hundreds of addicts who have been charged with drug crimes in this District. Pretrial Services has the programs available, and Mr. Thomson is exactly the type of individual these programs are designed for. He is certainly not the type of offender Congress envisaged when permitting the Courts to impose pretrial detention. That was to be saved for the particularly dangerous defendant, the international narco-trafficker with money and contacts which would permit flight and the avoidance of arrest. It was assumed that release on personal recognizance, or with reasonable conditions of release, would remain the norm. We are here presented with the case of a long time street addict, who if the government is to be believed, aided and abetted the sale of a single gram of cocaine. Pretrial detention is simply not justified in these circumstances. Moreover, in light of the Supreme Court's recent decision regarding the United States Sentencing Guidelines, making them "advisory", it is of critical importance that Mr. Thomson be given the chance to show that he is amenable to treatment and rehabilitation, and that drug-free he can abide by the law. Such a showing by Mr. Thomson will inevitably weigh significantly in any sentencing decision the Court might make should he be convicted of the crimes charged. Mr. Thomson asks for a chance to enter treatment, and he deserves to be given this one opportunity.

## **CONCLUSION**

For the reasons stated herein, the defendant prays that the Court revoke the Detention Order, and hold a hearing to set conditions of release allowing Mr. Thomson to

enter a residential drug treatment program, and whatever other conditions the Court deems appropriate.

                              Respectfully Submitted,
                              Karl Thomson
                              By his attorney

                              <u>/s/ Michael Andrews</u>

                              Michael C. Andrews
                              21 Custom House Street
                              Boston, Massachusetts 02110
                              (617) 951-0072
                              BBO# 546470